Dyer *et al. v.* Dyer *et al.*

---

No. 8923.

## DYER ET AL. *v.* DYER ET AL.

WILL.—*Attestation.*—Where one expresses a wish to make a will, directs it to be prepared, and, this having been done, signs it, a request by the person who prepared it, made in the hearing of the testator, that persons shall attest it, not objected to, is in law a request of the testator.

SAME.—*Statute Construed.*—The statute, R. S. 1881, section 2576, does not require that the witnesses to the execution of a will shall attest it at the testator's request, and such request is not necessary.

INSTRUCTIONS.—An instruction applicable to the evidence, and correct in the abstract, is not erroneous because it does not contain matter which might properly have been given, but was not requested.

EVIDENCE.—*Witness.—Opinion.—Jury.—Circumstances.*—The opinion of a witness can not be taken as to whether one heard certain words addressed to him in the hearing of the witness, but it is for the jury to decide from evidence of the circumstances.

SAME.—*Res Gestæ.—Will.—Mental Condition of Testator.*—On the question of a testator's mental condition when he executed a will, evidence showing his state of mind the day before is admissible, and where the will in question was made to supply one executed on that day, which had been lost, such evidence is part of the *res gestæ*.

From the Hamilton Circuit Court.

| 87 | 13 |
|----|-----|
| 134 | 328 |
| 87 | 13 |
| 142 | 199 |
| 87 | 13 |
| 144 | 491 |
| 87 | 13 |
| f168 | 266 |

*T. J. Kane* and *T. P. Davis*, for appellants.

*D. Moss* and *R. R. Stephenson*, for appellees.

NIBLACK, J.—Mrs. Eliza Dyer was, during the last four or five years of her life, a widow, and the owner of a small farm and a personal estate of the value of several hundred dollars, in the county of Hamilton, in this State. On the 10th day of April, 1879, being then dangerously ill from a severe attack of pneumonia, she requested Dr. James M. Garretson, her attending physician, to prepare for her a will, disposing of all her property, and gave him specific directions as to the disposition she wished to make of her property. Dr. Garretson thereupon proceeded to write a will for her, in accordance with her directions, which, for aught that appears to the contrary, was duly executed by her on that day. A search having been made next morning for that will, it could not be found; and, after some time spent in trying to find it, it was given up as lost. The loss of the will was at once communicated to Mrs. Dyer by John W. McClintock, one of her neighbors, who happened to be then at her house. McClintock at the same time suggested to her that Dr. Garretson could write another will for her like the one that was lost. To this suggestion some of the witnesses say she expressly assented; others, that she made no response. At all events, Garretson, who was then also at the house, sent for writing material, and wrote another will substantially similar to the former one, except that he, by mistake, omitted the name of one of the legatees to whom a merely nominal legacy had been given by the former will, and, after completing it, read it over to Mrs. Dyer, who expressed herself satisfied with its provisions. She thereupon turned in her bed and touched the pen while Garretson signed her name to what he had written. Garretson and McClintock thereupon signed their names to the paper as witnesses in what purported to be the usual form under the statute then in force concerning the execution of wills. This signing and attestation took place about 9 o'clock A. M. on

the 11th day of April, 1879. A few hours afterwards Mrs. Dyer grew worse, and she died late in the afternoon of that day. On the 21st day of April, 1879, the writing lastly signed as above by Mrs. Dyer was duly proven to have been executed by her as her last will and testament, by the oath of Garretson, one of the subscribing witnesses, and as such last will was admitted to probate in due form by the clerk of the Hamilton Circuit Court. After this letters testamentary were issued to Thomas L. Beckwith upon the estate of Mrs. Dyer.

This action was brought by Robert Dyer, William Dyer, Martha Young, George Young, Ann Garretson, George Garretson, Jane Hoddy, Sarah C. Dyer, Josiah W. Dyer and Elizabeth Dyer against Samuel Dyer, Isabella Beckwith and Thomas L. Beckwith, the executor, to set aside the alleged will of Mrs. Dyer, so admitted to probate, and the probate thereof, upon the grounds:

*First.* That said alleged will was not signed by her.

*Second.* That the said supposed will was not properly attested by the persons whose names are attached thereto as witnesses.

*Third.* That, at the time of the execution of the so-called will, she, the decedent, was of unsound mind.

The parties, plaintiffs and defendants, embraced all of the children of the decedent, some of her sons-in-law and the executor of her said contested will. Verdict for the defendants; motion for a new trial overruled, and judgment on the verdict.

Error is assigned only upon the overruling of the motion for a new trial.

In support of that assignment of error, it is claimed that the verdict was not sustained by sufficient evidence. We, however, see no reason for disturbing the verdict upon the evidence. The burden of the issue was upon the appellants, and, granting that the evidence was, in many respects, conflicting and unsatisfactory, as in some respects it unquestionably was, it does not necessarily follow that the verdict ought to have been against the appellees. That constituted a con-

dition, as applicable to the evidence, which is usually taken most strongly against the party having the burden of the issue. Besides, there was evidence tending to prove that Mrs. Dyer signed the will in contest; that she was of sound mind and disposing memory when she signed it, and that its execution had been duly attested and proven. That was sufficient to sustain the verdict, whatever may have been the evidence to the contrary.

It was alleged as a cause for a new trial that the jury permitted their bailiff to remain in their room a large part of the time while they were deliberating upon their verdict; but the only affidavit we find in the record ostensibly in support of that alleged cause, is copied into and made•a part of the motion for a new trial, and is not contained in any bill of exceptions, or otherwise made a part of the record. The affidavit is not, therefore, before us in any authentic form, and can not be considered as establishing the truth of the charge of misconduct made against the jury. *Martin* v. *Harrison,* 50 Ind. 270; *Stott* v. *Smith,* 70 Ind. 298; *Lefever* v. *Johnson,* 79 Ind. 554.

It is also claimed that the court erred in giving instructions numbered from one to eight, both inclusive, as requested by the appellees.

The first four instructions had reference to what was necessary to constitute a formal and valid execution of a will under the statute.

The first instruction told the jury that " the witnesses to a will must attest and subscribe the same in the presence of the testator and at his request. It is not imperative, however, that the request should proceed directly and immediately from the testator himself. If the testator requests a person to prepare his will, informing him that he desires to make a will, and a will is prepared for execution in compliance with such request, and when ready for execution the person who prepared the will calls upon persons present, and in the presence and hearing of the testator, to attest and subscribe it, and in the presence of the testator, and with his knowledge, and

without objection, they attest and subscribe it as attesting witnesses, it is, in contemplation of law, attested and subscribed by the request of the testator."

It is admitted that the doctrine of this instruction is in some respects supported by the case of *Bundy* v. *McKnight*, 48 Ind. 502, but it is argued that the instruction was not applicable to the facts of this case. In what material respect, however, it was not as applicable to this case as to that is not clearly pointed out, and to our minds is not obvious. At all events, we see nothing in this instruction which ought to be regarded as prejudicial to the interests of the appellants.

The objections urged to the second and third instructions are that they both omitted to say that the witnesses to a will must subscribe their names *at the request of the testator*.

The power to make wills, the manner of their execution, and their efficacy when made, are matters of statutory regulation. Many of the decided cases hold that the attestation of a will must be at the request of the testator, but these cases are of binding authority only where there is a statute requiring a will to be so attested.

In the case of *Bundy* v. *McKnight*, *supra*, it was held that, under the statute of 1852, which was in force when the writing in controversy in this case was executed, it was not necessary that witnesses to the execution of a will should be requested to subscribe their names by the testator.

That statute provided that a will must be "signed by the testator, or by some one in his presence, with his consent, and attested and subscribed in his presence by two or more competent witnesses." 2 R. S. 1876, p. 575, sec. 18; R. S. 1881, sec. 2576.

As has been seen, the first instruction told the jury that the attestation must be at the request of the testator. In that respect, therefore, it was more favorable to the appellants than they had the right to require that it should be. The objec-

tions urged against the second and third instructions can not, consequently, be sustained.

The fifth instruction complained of was as follows: "It is only requisite that a testator, at the time of making his will, should be of such sound mind and memory as to enable him to know and understand the business in which he is engaged. It is not necessary that he should be in the full possession of his reasoning faculties."

This instruction may, we think, be paraphrased and construed to mean that to authorize a testator to make a will he need not be in full possession of his reasoning faculties, but must be of sufficiently sound mind and memory to enable him to understand and to realize the nature of the business in which he is engaged, that is, to comprehend what it is to make a will, and to give intelligent directions as to the disposition which he wishes to make of his property. Thus paraphrased and construed, the instruction falls within the doctrine of the case of *Runkle* v. *Gates*, 11 Ind. 95, and is fairly sustained by leading authorities on the subject of wills. 1 Redf. Wills, 64, also, 78; *Converse* v. *Converse*, 21 Vt. 168.

The eighth instruction, given at the request of the appellees, was to the following effect: "A testator has the right to dispose of his property as he pleases, and the fact that he makes a difference in his children as to the amount he wills them, or that he gives one all and the others nothing, will not make any difference as to the validity of the will."

This instruction is conceded to be abstractly correct, but it is insisted that the court ought in the same connection to have told the jury that where a testator unreasonably excludes some of his children, that constitutes a circumstance which they might consider as bearing upon his mental condition at the time he executed the will. The instruction being abstractly correct and applicable to one phase of the case then on trial, the appellants have no reason to complain of it as having been erroneously given. If they had, at the time, desired to have the jury further instructed, as they now insist the jury should

have been, they ought to have requested an additional instruction embracing what the court, in their estimation, ought to have told the jury as above, in connection with the eighth instruction. In this way the question made in argument upon the eighth instruction might have been brought into the record.

Nothing has been said indicating any specific objection to any of the remaining instructions given at the request of the appellees.

Mrs. Garretson, one of the daughters of the testatrix, testified that she was present at the time the loss of the first will was communicated to her mother, and to her recollection of the conversation which ensued, as well as to the manner in which her mother acted on the occasion.

Counsel for the appellants then asked her the following question: " What is your judgment as to whether your mother heard his (McClintock's) remark at all when he said the Doctor (Garretson) could write another will?" The court refused to permit the witness to answer that question, and it is contended that the court erred in so refusing to permit that question to be answered.

The facts as to what occurred at the time had all gone to the jury, and no case had been made upon those facts calling for the mere opinion of any witness, either expert or non-expert, as to whether or not the testatrix heard all that was said at the time indicated. There was no error, therefore, in excluding the answer of the witness to the question propounded to her.

Dr. Garretson and Mrs. Beckwith, another daughter of the testatrix, were both permitted to testify to the testatrix's apparent mental condition the day before as well as on the day the will admitted to probate was executed, and a question was reserved upon the admission of so much of that evidence as related to the day before the will was executed, upon the ground that the testatrix's mental condition on that day was immaterial. As bearing upon the mental condition of a person at a given time, the state of his mind for some time before, as

well as shortly after the time indicated, may be enquired into. 1 Greenl. Ev., sections 42, 370.

As regards, however, the execution of the will sought to be set aside in this case, everything which occurred the day before, in connection with the execution of the first will, was, under the circumstances, a part of the *res gestæ*, and the admission of evidence upon that theory was not erroneous.

In their rebutting evidence the appellants offered to prove by three different witnesses, that the testatrix, a short time before she was taken sick, made declarations as to the manner in which she intended to dispose of her property, differing from the disposition made of it by her will; but the court refused to permit the proposed proof to be made, upon the ground that it was not proper rebutting evidence. No argument has been submitted in opposition to the assumption upon which the proposed evidence was rejected. We must, therefore, act upon the supposition that it was correctly rejected, as it apparently was.

The judgment is affirmed, with costs.